No. 11-50568

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**RON WALDEN,**

*Plaintiff-Appellant,*

v.

**TYSON FOODS, INC.,**

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
No. SA-10-CV-497-OG

_____

**BRIEF OF APPELLANT RON WALDEN**

_____

John P. Mobbs
7170 Westwind Dr., ste. 201
El Paso, Texas 79912
Telephone: (915) 541-8810
Facsimile:  (915) 541-8830
johnmobbs@gmail.com
Attorney for Appellant

**ORAL ARGUMENT REQUESTED**

No. 11-50568

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**RON WALDEN,**

*Plaintiff-Appellant,*

v.

**TYSON FOODS, INC.,**

*Defendant-Appellee.*

_____

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

**Appellant:**
Ron Walden

**Attorneys for Appellant:**
John P. Mobbs
7170 Westwind Dr., ste. 201
El Paso, TX 79912
(Appeal Only)

Javier Espinoza
Law Office of Javier Espinoza, PC
719 S. Flores, ste. 100
San Antonio, TX 78204

**Appellee:**
Tyson Foods, Inc.

**Attorneys for Appellee**
Brian J. Fisher
Zach T. Mayer
Kane Russell Coleman & Logan PC
1601 Elm St., ste. 3700
Dallas, TX 75201

/s/ John P. Mobbs
John P. Mobbs
Attorney of record for Appellant

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is likely to materially aid the Court in its review of the issues presented by highlighting the inconsistency between the district court's analysis and the governing standard of review on motions for summary judgment, as well as portions of the record which the district court erroneously disregarded in granting summary judgment, including direct testimony contrary to the version of the facts propounded by Appellee and accepted by the district court.  Appellant respectfully requests oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    Appellant Ron Walden's background and employment with Appellee
      Tyson Foods and Tyson Foods' training on safety procedures. . . . . . . . . . . 1

B.    Walden sustained a serious on-the-job injury on July 31, 2008. . . . . . . . . 3

C.    Walden was terminated from his employment on August 7, 2008. . . . . . . 5

D.    The conflicting testimony regarding the circumstances of Walden's
      signing of an acceptance of benefits and waiver of right to sue. . . . . . . . . 6

E.    The conflicting testimony regarding the date the acceptance and waiver
      was signed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F.    Walden's continued medical difficulties. . . . . . . . . . . . . . . . . . . . . . . . . . 10

G.    Walden filed this suit, but the district court disbelieved Walden's
      testimony and granted summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.     Standard of review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.    The district court erred in granting summary judgment based on
       Appellee's defense of waiver, because the evidence raised genuine fact
       issues as to the enforceability of the waiver document. . . . . . . . . . . . . . . 17

       A.     Texas limits enforceability of waivers of the right to recover
              damages  for  on-the-job  injuries,  including  prohibiting
              enforcement of waivers signed within a certain time period after
              the injury and those which are signed without knowledge of their
              effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       B.     The evidence raised a genuine issue of material fact as to when
              the waiver at issue was signed, precluding summary judgment. . . . 21

       C.     The evidence raised a genuine issue of material fact as to whether
              Appellant signed the waiver without knowledge of its effect. . . . . . 25

III.   The district court erred in granting summary judgment on Appellant's
       claim for punitive damages, because the evidence raised genuine issues
       of material fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

*Blackshire v. Tyson Foods, Inc.,*
2010 WL 3257371 (E.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 28

*Halliburton v. Ocean Drilling & Exploration Co.,*
620 F.2d 444 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Harvill v. Westward Communications, LLC,*
433 F.3d 428 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*International Shortstop, Inc. v. Rally's, Inc.,*
939 F.2d 1257 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Petty v. Odyssea Vessels, Inc.,*
115 F.Supp.2d 768 (S.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Reeves v. Sanderson Plumbing Prods. Co.,*
530 U.S. 133 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Riverwood Int'l Corp. v. Employers Ins. of Wausau,*
420 F.3d 378 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Voutsa v. Gonzales,*
222 Fed.Appx. 365 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**State cases**

*Barnhart v. Kansas City, Mexico, & Orient Ry., Co. of Texas,*
184 S.W. 176 (Tex. 1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Bison Bldg. Materials, Ltd.,*
2008 WL 2548568 (Tex.App.–Houston [1st Dist.] 2008, orig. proceeding) . 18, 19

*Burk Royalty Co. v. Walls*,
616 S.W.2d 911 (Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Delta Drilling Co. v. Cruz*,
707 S.W.2d 660 (Tex.App.–Corpus Christi 1986, no writ) . . . . . . . . . . . . . . . 30

*Kroger Co. v. Keng*,
23 S.W.3d 347 (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lawrence v. CDB Services*,
44 S.W.3d 544 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Lopez v. The Garbage Man, Inc.*,
2011 WL 1259523 (Tex.App.–Tyler 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . 28

*Storage & Processors, Inc. v. Reyes*,
134 S.W.3d 190 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Wright v. Gifford-Hill & Co., Inc.*,
736 S.W.2d 828 (Tex.App.–Waco 1987, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . 30

*Watts v. Pilgrim's Pride Corp.*,
2005 WL 2404111 (Tex.App.–Tyler 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . 18

**Statutes**

28 U.S.C. section 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

28 U.S.C. section 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Texas Civil Practice and Remedies Code section 41.001 . . . . . . . . . . . . . . . . . 29

Texas Labor Code section 406.033 . . . . . . . . . . 17, 18, 19, 20, 21, 25, 26, 27, 28

**Rule**

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# JURISDICTIONAL STATEMENT

This is an appeal from a final summary judgment that disposed of all parties' claims, in a suit for negligence resulting in an on-the-job injury against an employer that did not provide workers' compensation insurance. (R. 131, 527). The district court possessed subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeded the jurisdictional minimum. (R. 8). The district court's summary judgment was entered on May 23, 2011. (R. 536). Appellant's notice of appeal was timely filed less than thirty days later, on June 20, 2011. (R. 554). This Court possesses jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.    The district court erred in granting summary judgment on Appellant's negligence claim based on Appellee's waiver defense, because the summary judgment evidence raised genuine issues of material fact as to whether the waiver document was signed earlier than the tenth business day after Appellant was injured, making that waiver unenforceable under Texas law.

2.    The district court erred in granting summary judgment on Appellant's negligence claim based on Appellee's waiver defense, because (a) the district court erred in concluding that Appellant did not challenge the waiver on any basis other than the date it was signed, and (b) the summary judgment evidence raised genuine issues of material fact as to whether the waiver document was signed voluntarily and with notice of its effect, as required for an enforceable waiver under Texas law.

3.    The district court erred in granting summary judgment on Appellant's claim for exemplary damages, because the summary judgment evidence raised genuine issues of material fact as to whether Appellee was grossly negligent, permitting an award of exemplary damages under Texas law.

## STATEMENT OF THE CASE

Appellant Ron Walden filed this negligence suit against Appellee Tyson Foods, Inc., his former employer, after a serious on-the-job electric shock injury. (R. 131). Tyson Foods moved for summary judgment based on a defense that Walden had waived his right to sue in exchange for certain medical benefits. (R. 220). Walden replied that the waiver was unenforceable under Texas law, because it had been signed sooner than ten business days after the injury and because he had not signed it voluntarily and with knowledge of its effect. (R. 292, 299). The district court granted summary judgment, overlooking Walden's argument that he had not signed the document with knowledge of its effect, and finding that the evidence did not raise a genuine issue of material fact as to the date the document was signed. (R. 527, 534). The district court went on to also grant summary judgment on Walden's claim for exemplary damages based on gross negligence. (R. 535). Walden appeals. (R. 554).

# STATEMENT OF FACTS

Appellant Ron Walden suffered a serious electric shock injury while changing a 230-volt mercury vapor light bulb during the course of his employment with Appellee Tyson Foods, Inc.  His employment was terminated seven days later, and he signed a waiver of his right to sue for the injury.  Because Tyson Foods does not provide workers' compensation insurance to protect injured employees, Walden filed this suit.  Tyson Foods moved for summary judgment based on the waiver.  However, the evidence is disputed as to the circumstances and date of execution of this document, creating fact issues as to whether it is enforceable under Texas law.

## A.     Appellant Ron Walden's background and employment with Appellee Tyson Foods and Tyson Foods' training on safety procedures.

Walden went to work for Tyson Foods as an automation technician at its Seguin facility in May 2008.  (R. 232).  Walden does not hold any type of licensing or certification.  (R. 304).  He has not had any formal education since graduating high school, except for a few classes in the automotive field.  (R. 304).

The evidence is in conflict regarding the instruction given to new employees on electric equipment lockout/tagout procedures.[1]  Cessar Jaimes, maintenance manager at Tyson Foods' Seguin facility, testified that new hires are instructed on

---

[1] Lockout/tagout is a safety procedure for shutting off electric equipment and making sure the power stay off while repairs or maintenance are performed.

lockout/tagout procedures at orientation and annually.  (R. 325).  Allison Davis,

Tyson Foods' complex safety manager (and sole employee in its safety department),

also testified that new automation technicians are trained on lockout/tagout

procedures.  (R. 385).

However, Walden does not recall any training on lockout/tagout procedures.

(R. 305).  Davis did not recall what type of lockout/tagout training was provided to

employees at the time Walden was hired, in 2008, and does not specifically recall

giving Walden any such training.  (R. 386).  Refrigeration superintendent Alejandro

de la Cruz, who also reported to Jaimes, also testified that he did not receive any

orientation when he started to work; he was just put to work based on his prior

experience.  (R. 330).  He later received training on the lockout/tagout procedure, but

the training was not adequate to permit him to recall the steps of that procedure in his

deposition.  (R. 330, 331).

Walden also testified that there was no training with regards to changing out

light bulbs or working on light fixtures.  (R. 305).  Davis agrees that there is no

specific training on lockout/tagout procedures in connection with changing light

bulbs. (R. 359, 387).  In addition, no training was never conducted by an electrician,

and in fact, there had never been a licensed electrician at the facility.  (R. 325).  The

instructors' knowledge came only from their on-the-job experience.  (R. 325).

**B.     Walden sustained a serious on-the-job injury on July 31, 2008.**

Walden was injured on the job on July 31, 2008. (R. 233). De la Cruz instructed him to change a particular light bulb. (R. 305). Tyson Foods used 230-volt mercury vapor light bulbs in its facility. (R. 326). Walden had never worked on any mercury vapor light in the past. (R. 305).

Walden climbed a ladder to look in the fixture; he was not even sure if there was a light bulb in it. (R. 305, 306). The fixture was plugged into an outlet on the ceiling, less than a foot away from the fixture. (R. 306). He opened the fixture, and saw that the bottom of the bulb was blown out. (R. 306). He placed a rag around the jagged edge of the bulb, so that he could reach across to unplug the fixture without slicing himself on the broken glass. (R. 307). He did not see any other safe way to reach the outlet without coming into contact with the broken glass. (R. 307).

Walden managed to get the rag around the remnants of the bulb, where the glass was hanging down. (R. 307). He then reached to unplug the light, so that he could remove the broken bulb. (R. 307). As he was reaching, he received an electric shock. (R. 307). He later learned that the voltage of a mercury vapor light can jump a large space. (R. 307, 309).

Walden saw bright white and felt his body convulsing. (R. 307). He believes that the convulsions caused his feet to come off the ladder, so that his body weight

pulled his hand away from the electricity. (R. 307, 308). The next thing he remembers is waking up with his head hurting, surrounded by a lot blood from his head injury. (R. 308). He was only able to get to his hands and knees, and he radioed for help. (R. 308).

Two nurses came, who found that he had split the back of his head open. (R. 308). He was also bleeding from his hand, where the electricity exited his body. (R. 284, 308). He was helped down a flight of stairs and taken to a hospital by truck. (R. 308). His back was in excruciating pain. (R. 308). When he got to the hospital, he was not able to get out of the truck; he had to be assisted by wheelchair to the emergency room. (R. 308).

Walden spent two nights at the hospital. (R. 315). He was diagnosed with three crushed vertebrae. (R. 309). He was prescribed several medications, including a type of morphine. (R. 316). He was sometimes able to converse, and other times, he did not make sense. (R. 316).

James Knorpp, a former OSHA area director, professional engineer, and certified safety professional, reviewed the circumstances of the incident. (R. 346-49). Knorpp found that Tyson Foods failed to properly train workers in proper servicing of equipment and electrical safety, including a failure to establish safe work practices for the maintenance and change out of the 230-volt mercury vapor bulb. (R. 347).

He determined that the assignment of Walden to perform the work was unreasonably dangerous, given the lack of training, instruction, or qualification. (R. 347). He identified numerous OSHA regulations violated by Tyson Foods in connection with the incident. (R. 347-48). He concluded that Tyson Foods was negligent. (R. 348).

## C.     Walden was terminated from his employment on August 7, 2008.

Walden lives with Peggy Duncan, his fiancee. (R. 304, 309). She cared for him at home in the days after his release from the hospital. (R. 315). Walden was unable to drive himself after he was injured. (R. 310, 318). Therefore, Duncan accompanied him to his medical appointments. (R. 315). She also took him to Tyson Foods' facility. (R. 315).

Walden returned to Tyson Foods on August 4, 2008. (R. 310). Duncan drove him there, since he was unable to drive. (R. 310). At that time, he received a disciplinary action notification and three-day suspension. (R. 310). The stated reason for the suspension was a "willful violation" of the lockout/tagout policy. (R. 310, 333).

Walden disagreed with the statement that he violated policy. (R. 310). He believes he was following protocol and was in compliance with Tyson Foods' regulations by diagnosing the problem and then attempting to disable the power source when the accident occurred. (R. 309-10). Jaimes agreed that under Tyson

Foods' policy, there was nothing wrong with opening the cover and looking at the bulb first before disabling the power. (R. 327). Davis also acknowledged that it is not always necessary to de-energize a piece of equipment before going through lockout/tagout procedure. (R. 359).

Walden returned to the Tyson Foods plant again on August 7, 2008. (R. 311). On that date, his employment was terminated, on the basis of the same incident. (R. 233). The only reason stated on the notice of termination was "core safety violation." (R. 337). According to de la Cruz, he was terminated for violating the lockout/tagout procedure. (R. 331).

## D.     The conflicting testimony regarding the circumstances of Walden's signing of an acceptance of benefits and waiver of right to sue.

Tyson Foods does not carry workers' compensation insurance to protect its employees in the event of on-the-job injuries. (R. 232). Instead, it has developed a Workplace Injury Settlement Program (sometimes referred to as its "WISP" program.) (R. 242). Employees may obtain payment of certain medical benefits under this program, if they accept its terms and waive the right to sue Tyson Foods for on-the-job injuries.[2] (R. 255 [eligibility], 277 [acceptance and waiver form]).

---

[2]  According to Tyson Foods' staff nurse Kristin Mueller, Tyson Foods' way of tracking when the WISP waiver is due is by pulling the document, writing "due" with the date due on the top of the document, and clipping it to the front of the employee's file. (R. 382). However, this notation does not appear on the waiver signed by Walden. (R. 286).

Walden signed a workplace injury settlement program acceptance and waiver form. (R. 286-87). He signed it because he was told he had to sign it, or he wouldn't receive any medical attention. (R. 311). He had no other medical insurance, and his back was broken. (R. 311). His only question was whether his medical bills would be paid; he was told that Tyson Foods did not carry workers' compensation, so it would pay his bills. (R. 312).

According to Walden, he was heavily sedated at the time. (R. 311). He was in excruciating pain. (R. 311). His only concern was getting his back fixed. (R. 311). He signed the document so that he could get treatment. (R. 311).

Tyson Foods' Staff Nurse Kristin Mueller testified that she was present when Walden signed the document. In describing the events in her deposition, she stated that she "briefly reviewed" the acceptance and waiver with Walden, offered it to him, and he signed it. (R. 322). In her affidavit, Mueller went further, claiming that Walden actually read the document. (R. 282).

However, Walden disagrees. He testified that he did not read the document before he signed it. (R. 282, 311). He testified that nobody went through it with him. (R. 311). He asked for a copy of the document, but was refused a copy. (R. 311).

**E.    The conflicting testimony regarding the date the acceptance and waiver was signed.**

There is also disputed testimony regarding date on which the document was signed, which is significant to its enforceability under Texas law.  Tyson Foods claims that Walden signed the document at the Tyson Foods facility on August 14, 2008.  (R. 281-82).  Walden's position is that he signed the document no later than August 7.  (R. 311).

There is no dispute that it was signed within Tyson Foods' facility:  According to Mueller, she has never had to leave the premises to have somebody sign the waiver.  (R. 321).  She stated that in her experience, these documents have always been signed at the clinic on Tyson Foods' premises; though in the next breath, she stated that Walden signed the document in the human resources department rather than the clinic.  (R. 321).

There is also no dispute that the date applied to the document, August 14, was filled in by Mueller.  (R. 282, 322).  Mueller also apparently faxed the document to Tyson Foods' medical benefits administrator on August 14.  (R. 282; see R. 286 [fax header]).

However, Walden testified unequivocally that he did not return to Tyson Foods after August 7, because he had been terminated.  (R. 311).  He stated, "I remember going in and – the 4th, and then I went back on the 7th, and I – I did not return after

that because I had been terminated." (R. 311).

There is also evidence that Duncan was at the facility when Walden signed the acceptance and waiver. She was there when he signed some document regarding medical benefits; she did not see the document herself, but he told her that he signed it to obtain medical assistance. (R. 316). Mueller also recalls that there was a woman sitting next to Walden when he signed the acceptance and waiver, though she was not introduced, so she could not confirm that it was Duncan. (R. 322). Duncan agreed with Walden's testimony that the last date she took Walden to the facility was August 7. (R. 317). She definitely would remember if she had driven him to the facility after the date he was terminated. (R. 319).

Circumstantial evidence is consistent with Walden's testimony that he did not return to the facility after August 7. After employees are terminated, they are escorted off the property. (R. 331). It is unusual for them to have a reason to return after that date. (R. 331). Sometimes they do return, for example, to pick up tools or belongings. (R. 328). When this occurs, they are escorted in and out by a supervisor. (R. 328). However, Jaimes did not see Walden return to the plant after his August 7 termination. (R. 328). De la Cruz also did not see Walden at the plant after he was terminated. (R. 331). Tyson Foods has no security sheets or other sign-in sheets showing that Walden entered the premises on August 14, 2008. (R. 344).

**F.     Walden's continued medical difficulties**.

Walden's back injury was diagnosed in his initial emergency room visit.  (R. 312).  His doctor told him he would require a procedure to repair it.  (R. 312).  It took Tyson Foods six months to approve Walden having his back repaired.  (R. 312).  Throughout that time, he had to take morphine and use a back brace in order to even walk.  (R. 312).  He had to see a pain management doctor.  (R. 312).  He received steroid injections, was prescribed a TENS unit, and attended physical therapy.  (R. 291, 312).  The pain specialist prescribed electronic muscle stimulators, but Tyson Foods refused to pay for this treatment.  (R. 312).  Walden appealed this decision.  (R. 312).  However, as soon as Walden hired a lawyer, Tyson Foods cut off his medical benefits completely.  (R. 312).

Walden's activities were limited after the accident.  (R. 316).  He is not able to provide much help around the house.  (R. 316).  He and Duncan call on friends and family members to help with yard work and projects in the house.  (R. 317).  They had to get rid of their animals because they were no longer able to care for them.  (R. 317).

**G.     Walden filed this suit, but the district court disbelieved Walden's testimony and granted summary judgment**.

Because Tyson Foods is a workers' compensation nonsubscriber, Walden filed this suit for negligence.  (R. 18, 131).  Tyson Foods removed the case to federal court

10

based on diversity jurisdiction. (R. 6). Tyson Foods later moved for summary judgment based on the WISP acceptance and waiver, and alternatively, moved for summary judgment on Walden's claim for punitive damages. (R. 220 *et seq*.). The district court granted this motion, rendering a final judgment. (R. 527, 536).

The district judge compared Walden's testimony regarding the date the waiver was signed with Mueller's testimony. (R. 532-34). He wrote that Mueller "remembered in detail" the manner in which the waiver was signed, but that Walden's testimony on the subject was "vague at best." (R. 534, 533). He recognized that Duncan also testified that she had not taken Walden to Tyson Foods' facility after August 7, but pointed out that Duncan did not know exactly what documents Walden signed when she took him there. (R. 533). He cited Jaimes' testimony that he had seen Walden "a couple times" after he was injured, and that employees sometimes have a reason to return after they are terminated, going so far as to state that "it appears there were several reason why he may have returned" despite Walden's testimony that he had not done so; but ignored Jaimes' and De la Cruz's testimony that they had not seen Walden there after his termination. (R. 533-34; R. 328, 331). Walden respectfully submits that this analysis reflects the district court's assessment of the credibility of the witnesses and drawing of inferences in favor of Tyson Foods, in contradiction of the legal standards governing summary judgment.

11

Walden also argued that the waiver was unenforceable because he did not voluntarily sign it with knowledge of its effect. (R. 299). The district judge overlooked this argument, mistakenly stating that the only fact Walden disputed was the date the acceptance and waiver was signed. (R. 530). The district court therefore concluded that Walden had voluntarily and knowingly waived his claims. (R. 534). The district court further found that Tyson Foods was entitled to partial summary judgment with respect to punitive damages, stating that the facts did not raise a genuine fact issue as to gross negligence. (R. 535). Walden appeals. (R. 554).

## SUMMARY OF ARGUMENT

The district court granted summary judgment based on Appellant's signing of an acceptance and waiver form which waived his right to sue Appellee for negligence causing his on-the-job injury. Under Texas law, such a waiver may be enforced only if the employee signs it voluntarily, with knowledge of its effect; and only if it is signed ten or more business days after the date of the employee's injury. The summary judgment evidence raised genuine issues of fact on both of these elements, precluding summary judgment.

The waiver is unenforceable under Texas law unless it was signed on or after August 14, 2008. The parties agree that Walden signed the document at Tyson Foods' premises; and that he did not date the document, but it was dated by Mueller. Walden testified that he did not return to Tyson Foods' plant after August 7, the date he was terminated. Walden's fiancee acted as his driver in the period after his injury, and took him to the plant on August 7, but not on August 14. If he returned to the plant after August 7, he should have been accompanied by a supervisor, but neither of Walden's supervisors saw him after August 7. There is no security sign-in sheet showing Walden's entry to the premises on August 14. The evidence allows a jury to find that Walden signed the document before August 14, making summary judgment improper.

The district court found Walden's testimony "vague," while stating that Mueller "remembered in detail" the circumstances. Although Walden disagrees with this characterization, it clearly reflects that the district court based its decision on the perceived credibility of the witnesses. Whether testimony is "vague" or clear and whether a person's recall is detailed or lacks detail are considerations relevant only to the weight and credibility of the testimony. The district court usurped the role of the jury by basing its decision on this evaluation.

The evidence also raises a fact issue as to whether Walden signed the waiver voluntarily, with knowledge of its effect. He testified that he did not read the document, and nobody went over it with him. He was in excruciating pain. He was heavily sedated by pain medications. He was told only that he needed to sign the document to obtain medical treatment, and he signed it so that he could obtain that treatment. Because the trier of fact could find that Walden did not sign the document with knowledge of its effect, summary judgment was improper.

The trial court also erred in granting summary judgment as to punitive damages. Texas law permits exemplary damages for gross negligence when an employer fails to train employees on handling dangerous equipment. It is undisputed that there was no training specifically on light fixtures, and Walden did not recall any training at all on lockout/tagout procedures. Nonetheless, he was required to change

a 230-volt mercury vapor bulb, in a condition that allowed electricity to arc and severely injure him.  The evidence allows a reasonable jury to find that Walden received no training, and further, that the dangerous manner in which he changed the bulb was not contrary to Tyson Foods' safety policies.  Fact issues exist as to whether Tyson Foods was grossly negligent in failing to implement and train employees on policies dealing with hazardous electrical equipment, barring summary judgment.

The summary judgment should be reversed, and the case remanded for trial on the merits.

# ARGUMENT AND AUTHORITIES

## I.    Standard of review

This is an appeal from a summary judgment.  This Court reviews a district court's grant of summary judgment *de novo,* using the same standard as that applied by the district court. *Riverwood Int'l Corp. v. Employers Ins. of Wausau,* 420 F.3d 378, 382 (5th Cir. 2005). Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).  The Court views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.  *Riverwood,* 420 F.3d at 382 (citation omitted).  In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) (additional citation omitted).  So long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.  *Id.* Viewed by this standard, the district court erred in granting summary judgment.

II.    **The district court erred in granting summary judgment based on Appellee's defense of waiver, because the evidence raised genuine fact issues as to the enforceability of the waiver document**.

A.    **Texas limits enforceability of waivers of the right to recover damages for on-the-job injuries, including prohibiting enforcement of waivers signed within a certain time period after the injury and those which are signed without knowledge of their effect.**

Because Tyson Foods does not provide workers' compensation insurance to its employees, Walden filed this suit under Texas Labor Code section 406.033. This statute is intended to penalize employers who do not provide workers' compensation insurance, in order to discourage them from opting out of the workers' compensation system. *Kroger Co. v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000). It does so by limiting the defenses available to an employer who fails to provide workers' compensation insurance. *Id*. The statute is construed in favor of the injured worker. *Id.* at 349.

Texas law has long prohibited employers from forcing employees to assume the risk of on-the-job injuries. *See Barnhart v. Kansas City, Mexico, & Orient Ry., Co. of Texas*, 184 S.W. 176, 179 (Tex. 1916). Prior to 2001, Texas Courts reached inconsistent conclusions on the extent to which, and conditions under which, employees could agree to waive the right to recover for on-the-job injuries. *See Lawrence v. CDB Services*, 44 S.W.3d 544, 545-47 (Tex. 2001) (describing conflicting decisions). In 2001, the Texas Supreme Court held that the Texas Workers' Compensation Act did not prohibit employees from voluntarily waiving the

17

right to sue their employers for workplace injuries, and that the various public policy concerns implicated by these waivers were best resolved by the Legislature rather than the courts. *Lawrence*, 44 S.W.3d at 550, 553. The Court therefore held such waivers enforceable, provided they meet Texas' traditional "fair notice" requirements that an agreement waiving the right to sue another for negligence expressly and unambiguously state the waiver (the "express negligence" requirement) and that the waiver language be conspicuous within an agreement, such as by being written in contrasting type (the "conspicuousness" requirement). *Id.* at 553-54.

Within a few weeks after *Lawrence* was decided, the Texas Legislature responded to and abrogated that decision in part, by adopting section 406.033(e) of the Texas Labor Code. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004) (recognizing this abrogation); *Watts v. Pilgrim's Pride Corp.*, 2005 WL 2404111 at *3 (Tex.App.–Tyler 2005, no pet.) (memo. op.) (stating that legislative action was in response to *Lawrence*). Section 406.033(e) states that an agreement to waive a personal injury claim against an employer who does not carry workers' compensation insurance may not be waived prior to the employee's injury, and any such waiver is void. Tex.Lab.Code § 406.033(e). However, post-injury waivers, like Walden's, continued to be enforceable so long as they met the common-law fair notice requirements. *See, e.g., In re Bison Bldg. Materials, Ltd.*, 2008 WL 2548568

18

(Tex.App.–Houston [1ˢᵗ Dist.] 2008, orig. proceeding) (memo. op.) (enforcing waiver that employee signed at the hospital, immediately after receiving emergency medical treatment and while awaiting further treatment, but pointing out that injury occurred prior to legislative amendments described below).

In 2004, the Texas Supreme Court expounded on the fair notice requirements. *Storage & Processors, Inc.*, 134 S.W.3d at 193-94. The Court pointed out that workers' compensation is a strong public policy in Texas, and allowing employees to release their employers for anything less than the same level of benefits provided by the workers' compensation system, without a guarantee that the employee understood the plan he was accepting, would "substantially undercut" that policy. *Id.* at 194. The Court concluded that even though the fair notice requirements were not stated in the Texas Workers' Compensation Act, the public policy underlying that Act justified imposing these requirements on waivers signed by injured workers. *Id.*

The following legislative session, the Texas Legislature codified the requirements to allow enforcement of post-injury waivers, in Texas Labor Code subsections 406.033(f) and (g). In pertinent part, section 406.033 states:

    (a)    In an action against an employer who does not have workers' compensation insurance coverage to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

        (1)    the employee was guilty of contributory negligence;

        (2)    the employee assumed the risk of injury or death; or

19

(3)    the injury or death was caused by the negligence of a fellow employee.

* * *

(f)    A cause of action described by Subsection (a) may not be waived by an employee after the employee's injury unless:

(1)    **the employee voluntarily enters into the waiver with knowledge of the waiver's effect;**

(2)    **the waiver is entered into not earlier than the 10th business day after the date of the initial report of injury**;

(3)    the employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and

(4)    the waiver is in a writing under which the true intent of the parties is specifically stated in the document.

(g)    The waiver provisions required under Subsection (f) must be conspicuous and appear on the face of the agreement. To be conspicuous, the waiver provisions must appear in a type larger than the type contained in the body of the agreement or in contrasting colors.

Tex.Lab.Code § 406.033[3] (emphasis added).

Subsections (f) and (g) were enacted in 2005, and there is little caselaw interpreting these provisions to date. In the district court, Walden opposed summary judgment on the basis that subsection (f) had not been satisfied. He pointed to the

---

[3] The Texas Legislature amended the statute in certain respects effective September 1, 2011. The amendments do not address the waiver defense, and are only prospective in operation. Accordingly, all citations to section 406.033 in this brief are to the version in effect prior to the amendments.

evidence that the document had been signed earlier than the date applied by Mueller, and no later than August 7. (R. 297-98). He also pointed to the evidence that he did not voluntarily sign the waiver with knowledge of its effect. (R. 299). The district court erred in disregarding this evidence and granting summary judgment.

**B.     The evidence raised a genuine issue of material fact as to when the waiver at issue was signed, precluding summary judgment.**

The date of Walden's injury was July 31, 2008. (R. 233). Thus, to be enforceable, a waiver would have to be signed ten or more business days after that date, that is, on or after August 14, 2008. Tex.Lab.Code § 406.033(f)(2). The waiver is dated August 14, 2008, but it is undisputed that the date was applied to the document by Mueller. (R. 282, 322). Walden contends that he actually signed the document before that date, making it unenforceable under Texas law.

The summary judgment evidence included Walden's direct denial that he was present to sign the document on August 14. It was signed within Tyson Foods' facility. (R. 321). Tyson Foods terminated Walden on August 7. (R. 233, 311). Walden testified unequivocally that he did not return to Tyson Foods after August 7, because he had been terminated. (R. 311). He stated, "I remember going in and – the 4th, and then I went back on the 7th, and I – I did not return after that because I had been terminated." (R. 311). This testimony alone should be sufficient to create a fact issue for the jury on whether he signed the document prior to August 14.

21

Other evidence of the circumstances supports Walden's testimony that he was not present at the facility after August 7. There is evidence that Duncan was present at the time: Although she did not see the document he signed when she was there, she was present when he signed some document to obtain medical assistance, and Mueller recalls a woman being present when Walden signed the waiver. (R. 316, 322). Duncan agreed with Walden's testimony that the last date she took him to the facility was August 7, and testified that she would remember if she had taken him back again later. (R. 317, 319). When employees do return after termination, they are escorted in and out by a supervisor, but neither Jaimes nor De la Cruz saw Walden return to the facility after he was terminated. (R. 328, 331). Tyson Foods has no security sheets or other sign-in sheets showing that Walden entered the premises on August 14, 2008. (R. 344). Taken as a whole, the evidence sufficed to raise a fact issue for the jury as to whether Walden actually signed the document earlier than August 14.

The district court contrasted Walden's testimony with Mueller's testimony. (R. 533-34). He found that Walden's testimony was "vague" while Mueller "remembered in detail" the signing of the waiver. (R. 533-34). Walden disputes this characterization; his testimony that "I went back on the 7th, and I – I did not return after that because I had been terminated" is not "vague." (R. 311). There is nothing "vague" about his testimony that he did not read the document before he signed it,

nobody when through it with him, and he signed it because his only concern was obtaining medical treatment. (R. 311). And despite the district court's statement that Mueller "remembered in detail" the manner in which the waiver was signed, there is inconsistency between her deposition testimony that she briefly reviewed the document, offered it to Walden, and he signed it; and her affidavit testimony that Walden actually read the document. (R. 282, 322).

More importantly, the district court's analysis reflects that it improperly evaluated the credibility of the witnesses. Whether testimony is vague or specific goes to its credibility or weight. As this Court stated in *Harvill v. Westward Communications*, "Whether [the plaintiff's] allegations are too vague to ultimately carry the day is a credibility determination, or requires weighing the evidence, both of which are more appropriately done by the trier of fact." *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 436 (5th Cir. 2005). Whether or not a person remembers an event in detail likewise goes to the credibility of the person's testimony. *See Voutsa v. Gonzales*, 222 Fed.Appx. 365, 366 (5th Cir. 2007) (upholding determination that witness was not credible, due to his inability to recall certain details).

The district court went on to draw inferences in favor of the summary judgment movant, in contradiction of the established standards governing review of summary

judgment motions. Specifically, the court cited Jaimes' testimony that employees sometimes have a reason to return after they are terminated, going so far as to state that "it appears there were several reasons why he may have returned;" but ignored the fact that returning employees must be accompanied by supervisors, and Jaimes' and De la Cruz's testimony that they had not seen Walden at the facility after his termination. (R. 533-34; R. 328, 331). Of course, a jury in this case may ultimately decide that Walden did return to the premises after August 7; but the district court's grant of summary judgment based on his finding that "it appears" there were reasons Walden "may have" returned to the premises, despite his express denial that he did so, clearly drew an inference from the evidence against the non-movant.

It is well-established that in considering a motion for summary judgment, a district court may not make credibility determinations or weigh the evidence, and must draw all reasonable inferences in favor of the non-movant. *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 150 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The district court erred by usurping the role of the jury to grant summary judgment based on the perceived credibility of the witnesses and inferences drawn against the non-movant.

Taking Walden's testimony as true, and viewing the conflicting evidence in the light most favorable to him, a reasonable trier of fact could conclude that Walden signed the acceptance and waiver before August 14, making it unenforceable under Texas law. The district court therefore erred in granting summary judgment based on the waiver defense. The summary judgment should be reversed, and the case remanded for trial on the merits.

### C. The evidence raised genuine issues of material fact as to whether Walden signed the document with knowledge of the its effect.

Additionally, a fact issue is raised precluding summary judgment as to whether Walden signed the document without knowledge of its effect, making it unenforceable. Tex.Lab.Code § 406.033(f)(1). The district court mistakenly stated that the only fact Walden disputed was the date the acceptance and waiver was signed. (R. 530). However, Walden's response to Tyson Foods' motion for summary judgment also argued that the waiver was unenforceable because he did not voluntarily sign it with knowledge of its effect. (R. 299, stating that Walden "could not have 'voluntarily entered into the waiver with knowledge of the waiver's effect'"). To the extent the district court's summary judgment was predicated on its perception that the only disputed fact issue was the date the waiver was signed, the district court erred by simply misreading Walden's pleading, and its judgment should be reversed.

The evidence raised a genuine issue of material fact as to whether Walden signed the waiver with knowledge of its effect.  He testified that he did not actually read the document, and nobody read it or went over it with him (R. 311).  Mueller's deposition testimony does not necessarily contradict this statement, as she testified merely that she "briefly reviewed" the document, then offered it to Walden, and he signed it.  (R. 322).  According to Walden, the only thing he was told was that he needed to sign it to get medical treatment.  (R. 311).  His only concern was getting his back fixed.  (R. 311).  He was in excruciating pain.  (R. 311).  He signed the document so he could "get treatment and get fixed."  (R. 311).

This evidence allows a reasonable trier of fact to conclude that Walden did not actually sign the document with knowledge of its effect, as required by Texas Labor Code section 406.033(f)(1).  In *Blackshire v. Tyson Foods, Inc.* (coincidentally involving the same employer and waiver form), the district court held that subsection 406.033(f)(1) precluded summary judgment, because of the employee's explanation that he did not understand the waiver when he signed it, but he signed it in order to have his medical expenses paid.  *Blackshire v. Tyson Foods, Inc.*, 2010 WL 3257371 at *3-*4 (E.D. Tex. 2010).  The Court reasoned that the language of subsection (f)(1), invalidating a waiver unless the employee "voluntarily enters into the waiver with knowledge of the waiver's effect," supersedes the common-law principle that one

who signs a contract is held to know the legal effect and meaning of that contract. *Blackshire*, 2010 WL 3257371 at *4. This is only logical; if the common-law rule controlled, such that every employee who signed a waiver was presumed to have signed it voluntarily with knowledge of its effect, then a waiver could never be voided by subsection (f)(1), and the statute would be meaningless.

Additional evidence that Walden did not know the effect of the document when he signed it arises from his medical condition. Walden explained that he was "heavily sedated" with pain medication at the time he signed the document. (R. 311). He had been prescribed medication including hydrocodone, Xanax, and a type of morphine. (R. 310, 316). Courts have found fact issues precluding enforcement of releases of injury claims by summary judgment, in cases where the plaintiff's medications impaired their mental capacity. *Halliburton v. Ocean Drilling & Exploration Co.*, 620 F.2d 444, 445 (5th Cir. 1980); *Petty v. Odyssea Vessels, Inc.*, 115 F.Supp.2d 768, 771-72 (S.D. Tex. 2000).

It is true that Tyson Foods' acceptance and waiver form recites that the employee read and understood the waiver document, and understood and accepted the terms of the benefits program. (R. 287). In one case, a Texas court of appeals held that such a recitation within the employer's form sufficed to establish that the employee signed the document with knowledge of its effect, within the meaning of

section 406.033(f)(1).  *Lopez v. The Garbage Man, Inc.*, 2011 WL 1259523 at *18 (Tex.App.–Tyler 2011, no pet.) (memo. op.).  As explained in *Blackshire*, allowing this recitation alone to establish the employee's knowledge of the effect of the release would be inconsistent with the statute.  *Blackshire*, 2010 WL 3257371 at *4.  In the circumstances of this case, considering the other evidence that Walden did not understand the effect what he was signing, this recitation within the document merely raises a factual dispute that should be resolved by the trier of fact rather than decided by the district court by summary judgment.

The trial court erred in stating that Walden did not dispute that he signed the agreement with knowledge of its effect, and in concluding that the evidence did not raise a genuine issue of material fact for the jury on this question.  The summary judgment should be reversed, and the case remanded for trial on the merits.

III.   **The district court erred in granting summary judgment on Appellant's claim for punitive damages, because the evidence raised genuine issues of material fact**.

The district court also granted partial summary judgment on Walden's claim for punitive damages. (R. 535). Under Texas law, punitive damages may be assessed based on gross negligence when a defendant's act or omission, viewed objectively from the standpoint of the actor at the time, involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. Tex.Civ.Prac.& Rem.Code § 41.001(11). The evidence allows a reasonable trier of fact to find Tyson Foods grossly negligent, permitting an assessment of punitive damages.

A Texas employer has a non-delegable duty to provide rules and regulations for the safety of its employees, to furnish safe machinery and instrumentalities, to provide a safe place to work, and to select careful and competent fellow servants. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923-24 (Tex. 1981). The breach of the duty to provide a safe workplace, including failing to adopt or implement appropriate safety policies, has often been found to constitute gross negligence. In *Burk Royalty*, for example, a gross negligence finding was affirmed based on evidence that the deceased oil rig worker had not been provided with safety equipment, specifically,

a quick-release on a safety belt that would allow him to get to the ground in an emergency, and that the defendant employer had not conducted safety training or distributed safety policies. *Burk Royalty*, 616 S.W.2d at 922-23. *See also Wright v. Gifford-Hill & Co., Inc.*, 736 S.W.2d 828, 832-33 (Tex.App.–Waco 1987, writ ref'd n.r.e.) (finding sufficient evidence of gross negligence in employer's failure to implement or enforce any meaningful safety program to warn or protect its employees from danger of workplace equipment); *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 665-66 (Tex.App.–Corpus Christi 1986, no writ) (upholding finding that employer was grossly negligent with respect to elevator maintenance, when it did not provide any maintenance instruction or establish safety standards).

The evidence in this case raised genuine fact issues for the jury as to whether Tyson Foods was grossly negligent in failing to adopt safety policies or provide Walden with instruction or training that would have prevented his injury. Walden does not recall any training on lockout/tagout procedures. (R. 305). Davis did not recall what type of lockout/tagout training was provided to employees at the time Walden was hired, in 2008, and does not specifically recall giving Walden any such training. (R. 386). De la Cruz also testified that he did not receive any orientation when he started to work; he was just put to work based on his prior experience. (R. 330). Although he later received training on the lockout/tagout procedure, that

training was not adequate to permit him to recall the steps of that procedure in his deposition. (R. 330, 331). Walden also testified that there was no training with regards to changing out light bulbs or working on light fixtures. (R. 305). Davis agrees that there is no specific training on lockout/tagout procedures in connection with changing light bulbs. (R. 359, 387).

Walden was injured when he reached to unplug the light, after opening its cover and wrapping a rag around the shattered bulb. (R. 307). His reach was apparently close enough to the open cover of the light fixture to allow electricity to arc across the distance and shock him before he unplugged the fixture. (R. 307-09). Walden believes he was following Tyson Foods' policy by diagnosing the problem and then attempting to disable the power source when the accident occurred. (R. 309-10). Jaimes agreed that under Tyson Foods' policy, there was nothing wrong with opening the cover and looking at the bulb first before disabling the power. (R. 327).

Former OSHA director Knorpp found that Tyson Foods failed to properly train workers in proper servicing of equipment and electrical safety, including a failure to establish safe work practices for the maintenance and change out of the 230-volt mercury vapor bulb. (R. 347). He determined that the assignment of Walden to perform the work was unreasonably dangerous, given the lack of training, instruction, or qualification. (R. 347). He identified numerous OSHA regulations violated by

Tyson Foods in connection with the incident.  (R. 347-48).

Based on this evidence, a genuine fact issue is raised for the jury as to whether Tyson Foods proceeded with conscious indifference to a known risk by requiring its employees to change 230-volt bulbs without establishing any safety procedures or giving them any instruction that would protect them from injury by electric shock. The district court erred in granting summary judgment on Walden's claim for punitive damages based on gross negligence, and the summary judgment should be reversed.

## PRAYER

Appellant respectfully requests that the Court reverse the summary judgment of the district court, and remand the case for trial on the merits, that he be awarded his costs of appeal, and such other relief to which he may be justly entitled.

Respectfully submitted,


/s/ John P. Mobbs
John P. Mobbs
Texas Bar No. 00784618
7170 Westwind Dr., ste. 201
El Paso, Texas 79912
Telephone: (915) 541-8810
Facsimile:  (915) 541-8830
johnmobbs@gmail.com

Attorney for Appellant


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief of Appellants has been electronically filed in the office of the Clerk for the United States Court of Appeals for the Fifth Circuit, and a true and correct electronic copy of the brief has been electronically served on Appellee's Counsel, Zach T. Mayer, Kane Russell Coleman & Logan PC, 1601 Elm St., ste. 3700, Dallas, TX 75201, with paper copies to follow via first-class U.S. mail, on this 27th day of September, 2011.


/s/ John P. Mobbs
John P. Mobbs
Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type volume limitations of Fed. R. App. P. 32(a)(7) because:

   This brief contains 7,794 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

   This brief has been prepared in proportionally spaced typeface using: Corel WordPerfect X4 for Windows in 14-point size Times New Roman typeface.


/s/ John P. Mobbs
John P. Mobbs
Attorney for Appellant